201087. I understand, counsel, that you have reserved your rebuttal time. Are you prepared to begin? Yes, Your Honor. All right. Thank you. You may begin. Good morning, everyone. This is James Walton Copeland of the Copeland Law Firm in Atlanta, Georgia, for the Appellant Optimum Services, Inc. May it please the Court, Appellant is appealing a decision by the Civilian Board of Contract Appeals in which the Board denied Appellant's motion for summary judgment and granted the government's defensive motion for summary judgment and denied Appellant's appeal to the Board. At the Board, Appellant was appealing a National Park Service contracting officer final decision dated June 12, 2015, in which the agency denied Appellant's certified claim for lost profits dated January 15, 2015. The time limits will prevent me from arguing every point of Appellant's appeal today, so let me begin by expressly incorporating Appellant's final corrected versions of Appellant's filing, including the final version of Appellant's principal brief dated February 28, 2020, the final version of Appellant's reply brief dated April 20, 2020, and the... That's fine, counsel. We always incorporate your briefs into the briefs, Your Honor. And the final version of the joint appendix was July 16, 2020. There were numerous filings. I just wanted to clear that up. I'd also like to thank everyone in the clerk's office for all their work with the voluminous filing. Counsel, this is Judge Arena. Let me ask you a question. Are you seeking to recover unearned profits? Excuse me, Your Honor? Are you seeking to recover unearned profits? Yes, Your Honor. What's your legal authority? My legal authority is that a termination for convenience is a breach of contract when it is a clear abuse of discretion. That is a established standard in the Federal Circuit. When there is a contract termination for convenience, the contractor's recovery is not constrained by the termination for convenience clause. Counsel, as I understand it, you've got two separate arguments. One is that because of the guaranteed minimum and the order of precedence, the termination for convenience shouldn't even be considered until the minimum is satisfied or paid. But having said that, your other argument appears to be that the standard is abuse of discretion and that this constitutes an abuse of discretion. So, first of all, if the government is right and the standard is bad faith and that that's what you would have to prove, is there anything in the record that would show bad faith? Your Honor, I would submit that the standard is not bad faith. The standard is abuse of discretion. That is the language that this court has used numerous times. Bad faith is an alternative grounds for finding that a termination for convenience was improper. I'm just asking you if we were to accept the government's proposition that it's supposed to be bad faith. I'm not saying whether we would or wouldn't, but I'm saying if we would, is there evidence of actual bad faith in the record? Well, I believe there is, Your Honor, but that argument was too voluminous and lengthy to breathe in this appeal, so I dropped back the use of discretion which is reflected in the court's case law. I could have attempted to prove the bad faith, but I don't have to prove bad faith under the court's law. I only have to prove clear abuse of discretion. That's the standard. And I understand on your abuse of discretion argument that your primary point is that the bid protest that had been filed was so weak that it shouldn't have prompted any termination? That's correct. It was weak and it was untimely under the blue and gold rule as a matter of law and that was apparent from the face of the bid protest. There is a protest after award clause in the contract, is there not? Yes, there is, Your Honor. And is there anything in that clause that says that the right to terminate for convenience is dependent upon the strength of the bid protest? No, but the government does not have unlimited discretion to terminate for convenience in response to any bid protest. That would be an arbitrary and capricious amount of discretion. The cases that are out there looked at the strength of the protest in this situation. And to authorize a contracting officer to automatically terminate merely because there's a protest filed post-award would undermine the entire system. There's got to be some review of the merits of the protest to make sure that the decision is not an abuse of discretion. The closest case that I think we have is the G.C. Case Bolt decision that the board relies on. And in that 1970 Court of Claims decision, the court looked at the merit of the bid protest when it was reviewing the agency's decision to terminate. It looked at all the circumstances, the merit of the bid protest, the timing situation that the protest put the agency into, and then concluded, then the court concluded, after considering the merits and the affidavits that the government submitted to show the merits, then the court concluded that the completely different situation. The face of the bid protest shows that it was untimely as a matter of law under the blue and gold rule. All the cases on unfair competitive advantage that W.C.I. cited in its motion for T.R.O. tell everyone that there was no competitive advantage and that the protest lacked merit. Is that the only basis for termination that was articulated? The basis that was articulated for the termination in the contracting officer's final decision is really threefold. The government defended or attempted to justify the termination based on the strength of the protest, which is clearly lacking in merit. The government also defended based on an alleged reduction in funding. I've shown in the appendix, in the interrogatory answers, and in the brief that the alleged reduction in funding was no basis for termination for convenience because the alleged reduction in funding would not have prevented the government from ordering the guaranteed minimum. The record also shows that the government did in fact order the $2 million guaranteed minimum and that the government had $10 million or $12 million of funding on hand at all times for that $2 million minimum. Also, the contract put the bidders on uncertain and they couldn't expect anything more than the $2 million minimum. So the alleged funding reduction justification was totally immaterial under the court's precedent and the FAR clause. In the final decision, the government also defended the termination based on an alleged defect in the solicitation. Now, I nailed down what they were asking about there in the interrogatory answers and the government indicated that the defect in the solicitation that the government was so concerned about was actually an immaterial variance in some of the evaluation terms that the government had already rejected based on a WCI agency level protest in 2008. So the record shows that all of the government's proper justifications for the termination lack merit. It's right there in the documents. Is it your contention that the government just did it so it could do the small I can't necessarily prove why they did it, but I can prove that they didn't have a reasonable basis for doing it. All the justifications they've offered lack merit. There was no unfair bid competitive advantage. There was no material change in the funding and the defect in the solicitation that the government is relying on is immaterial as well. Okay, thank you counsel. We'll save you a rebuttal. Let me continue and also say that I actually have three arguments. The second argument is the order of precedence clause and the third argument is failure of consideration. I'll come back to those and that's all I have for my lead argument. Thank you. Okay, thank you. Okay, let's hear from the government. This is Daniel Volk and may it please the court the board's decision should be affirmed. There is no conflict between the termination for convenience clause and the contract's guaranteed minimum. These two provisions have different roles. The guaranteed minimum identifies the bottom of the ordering range in this indefinite quantity contract. This provision takes the place of a fixed quantity in a traditional fixed price contract. So instead of saying that the government will buy say 10 units for $10 each, an indefinite quantity contract specifies a minimum and a maximum setting the range for orders to be placed later. The termination for convenience clause by contrast gives the government a right to cancel the contract. Let me jump ahead and talk about some of the things we were talking about with your friend on the other side. I was kind of shocked by the government's red brief. You basically put all your eggs in the basket of saying that we as a panel should change the law or clarify the law and say it's not an abusive discretion standard. It is a pure bad faith standard. I was kind of surprised because you don't ever then address the question of what if we are operating under an abusive discretion or arbitrary and capricious standard. You don't ever join with the facts and say why this wouldn't satisfy that standard. You just say it's not, it has to be bad faith and there's no bad faith period. Well, your honor, we think that it doesn't satisfy that standard even if it were looked at for the same reasons the board found that. To start out, there was a jurisdictional issue for the board even before getting to the substance. That being that the board doesn't have jurisdiction to review bid protests. Optimum's arguments here, they start with trying to re-argue long ago decided bid protest claims. Optimum's counsel says- Well, what about this particular bid protest claim? Even if the board doesn't have the authority to decide a bid protest, it certainly has the authority to look and see if on the face of it, the protest was frivolous or untimely. Actually, your honor, we don't agree with that. The reason is that the only thing that the board had jurisdiction to review here is the government's termination for convenience. If you look at the contract, the plain language of the contract, the contract says that the government can terminate for convenience if the government's contracting officer determines that a termination is in the government's interest. What the board can look at there is- Is it your view that there's no review of that determination of government interest? There's really nothing of substance to review. Certainly, the board could look at, did that actually happen? Did the contracting officer determine that a termination is in the government's interest? As a factual matter, certainly that could be looked at. But then could the board then go further and say, was it a good decision? Is that really in the government's interest? No. Our position is definitely not that what's in the government's interest is for the government to decide. We think this court has recognized that it's not for a court or a judge to decide what's in the government's interest. The plain language of the contract doesn't say that the government can terminate for convenience if the contracting officer decides it's in the government's interest and the judge agrees or- and the judge finds that that's not an abuse of discretion. The government acquires a contract right like any contracting party acquires a contracting right. And there's no extra layer of a sort of APA-like administrative review of government decision-making. This is in contrast, of course, to bid protests. Bid protests, although not reviewable in the board's contracts bills, bid protests when they get reviewed at the Court of Federal Claims, they are reviewed. It is a review of government decision-making. The APA standard is used. That is not the case. It's too late to make a bid protest at this point when the government chooses to terminate the contract, right? Absolutely. There should be no bid protest arguments that are part of this case. Optimum had the opportunity and it did pursue its bid protest about 12 years ago. And so this case is solely a question of whether the government had the right and exercised its right properly under the termination for convenience clause. And so the government's right to do that is governed by the language in the contract. And that gives the government a very expansive unilateral right to terminate the contract through no fault of the contractor. And it's the government's decision. There's really nothing of substance within that language, within that clause for a judge to review. Now, if a contractor wants to and say, well, you've breached the contract by acting in bad faith or wants to pursue some other kind of, you know, there haven't really been others identified, but conceivably contractor can still pursue any kind of affirmative claim for breach it wants to pursue. But just because the government terminates the contracts for convenience, it doesn't then create an opportunity for the contractor to go to a judge and ask to have that, to have sort of an administrative review of government decision-making. It's only a question of whether- But again, you're back to the bad faith. I mean, I have a little bit of trouble with the notion that, I mean, basically you're just saying that we've got a lot of cases where we use language about abuse of discretion and or arbitrary and capricious, or we use that language and you pretty much just say that's just been sloppy on our part or dicta. And yet we continue to say it over and over. How is we as a panel, how are we supposed to say all of a sudden that's not the law? Well, we think you should start with the statute. So obviously it's a CDA case and there shouldn't really be any question that de novo is the board stand, the review of any contracting officer's decision by a board or the Court of Federal Claims under the CDA is always de novo. So there shouldn't be any question there. And then the next step is in this de novo review, what is being reviewed? Well, it's the contract. And so there's nothing in the contract where abuse of discretion comes in. And the way we would do the analysis is, you only get to the question of abuse of discretion by looking at by optimum arguments. Optimum points to all these cases where it is suggested that if it can show abuse of discretion, it can overturn the termination for convenience. But when you look at all of these cases, we don't find any of them where there's a holding. I mean, almost every one of them just rejects the argument that there was any abuse of discretion. But there are cases with a holding that really even directly addresses the question of post CDA, why this language is still being used. The citations usually just go back to cases like John Reiner, cases before the CDA was put in place, where there was a highly deferential standard to the contracting officer's decision making under the Wunderlich Act. They just cite back to language from these previous cases. So rather than, you know, go put that language again into another case, we really should consider, why is it there? Does it belong there? Certainly in some of these cases, like CalVar, you can find, you know, some kind of, there's some suggestion of, well, perhaps abuse of discretion is just part of bad faith, and it could all be reconciled that way. We don't think that's a good idea. I mean, abuse of discretion is not the same as bad faith. This court regularly reviews trial court decisions for abuse of discretion, and sometimes it finds it. It's not finding in those situations that the trial judge acted in bad faith. They're different things. How do you define bad faith in this case? What other bad faith? There's some personal animus toward the contractor? Yes, it's that second one. We don't see it as a constitutional issue. It's a contract law issue, and the cases on bad faith reflect generally that there needs to be a showing of a specific intent to injure the contractor. And obviously, there was just nothing like that presented here, as the board recognized, and so there was never really an opportunity to find bad faith here. Counselor, this is Judge Reyna. Would the appellant prevail under either a bad faith or an abuse of discretion requirement? No, no. Even if the court were to find that those both are avenues to establishing a breach, there was just simply no evidence, as the board explained, there was no evidence under which optimum could prevail under either of those standards. Okay. Do you want to address the other arguments that count, the consideration or the order of precedence arguments that counsel has preserved? Certainly, Your Honor. And as to the order of precedence, there is no need to look at that clause at all, because there is no conflict here. As I was explaining to start out, the two provisions, the ordering minimum and the termination for convenience, they have different roles. The specifying the minimum and maximum range, that just takes the place of what would have been recognized in some cases. What does the guaranteed minimum mean, then? It does sound to me, like in the contract, that at least if you're the contractor, you think you're guaranteed a certain amount. No, you shouldn't think that, Your Honor, because you should understand, going back to the case like Christian and associates, that the termination for convenience clause is so deeply ingrained. Even if it had been left out by omission, it would be right into the contract. That's such a deeply ingrained part of government contracting, that government contractors always should be going into contracts with the government, understanding that the government is bargaining for this very expansive unilateral right. And so, there is no additional protection, as I think it was explained in the Armed Services Board case, the Montana refining. There's no additional protection or different circumstances in an indefinite quantity contract versus a fixed price contract. Just as the government can terminate for convenience in a fixed price contract with a fixed quantity before it orders any unit, the government also can exercise termination for convenience right in an indefinite quantity contract before it's terminates the government's rights and obligations under the contract, all of them. So, if it exercises the termination provision, whenever it does, it has no further right or obligation to order any unit under the contract. The ordering range applies to if the contract is performed, if it is not terminated. So, there's no conflict between those two. And there's no lack of consideration either. Even within the termination for convenience clause, it specifies compensation to be paid to the contractor in the event that the termination for convenience clause is exercised. And that was paid to Optimum here. Optimum received every penny that it requested under the terms of the termination for convenience clause, under the terms of its contract. When it didn't receive... So, what do you think that they're looking for? Under the profits? Exactly, Your Honor. They're seeking their anticipated profits from if they had been allowed to perform the contract. And it's clear that that's not recoverable. So, they got what they were entitled to under the contract, under the agreement, and the board correctly determined that there is no claim for... There's no validity to a claim for breach to try to recover these profits. Other than that, in your view, what are the damages is the appellant claiming? That's it. From our understanding, Your Honor, there were two categories. There was roughly $21,000. This contract, of course, was terminated for convenience basically right after that. But Optimum claimed about $21,000 in costs under the termination for convenience settlement provisions. That was paid. And what was denied was the claim for the lost profits. So, that's it. That's all that's outstanding. And there's just no right to recover that under the contract. For these reasons and those expressed by the board as well as in our brief, we respectfully request that the court affirm the board's decision. Thank you, counsel. Mr. Copeland? Let me first begin by pointing out the major fallacy in the agency's position and the board's position and the government's brief. The government repeatedly says that the bid protest matters were those. That is simply not true. There was never a decision on the merits of WCI's bid protest because the government threw in the towel back in 2009. The Court of Federal Claims dismissed WCI's bid protest without any ruling on the merits because the government mooted the protest by cancelling the solicitation. Also, in April of 2009, there was a GAO decision in Optimum's protest of the cancellation of the solicitation. In that protest, Optimum was not protesting the termination for convenience. And significantly, the GAO did not address the merits of WCI's bid protest. Counselor, I kind of want to get back to that question on damages because I think that pretty well can determine the case. Now, you submitted a claim for $21,468 and you were paid that, correct? Yes, Your Honor. So what's left? What's left in this case that's legally supportable in terms of damages? What's left in this case is appellants' anticipated profits on the guaranteed minimum. What's the legal authority that you're entitled to anticipated profits? The legal authority is that when a termination for convenience is an abuse of discretion, the termination is a breach of contract for which the contractor is entitled. I'm looking for a case. Well, Securiforce in 2018 applied the clear abuse of discretion claim to a claim for unanticipated lost profits or an improper termination for convenience. And there are the whole line of clear abuse of discretion cases involving terminations for convenience are cases in which the contractor was seeking its anticipated profits. In these clear abuse of discretion cases, the measure of damages is the anticipated profits. Now, there are some cases that flatly say that unanticipated profits are not recoverable in the event of a termination for convenience. However, those cases do not deal with the abuse of discretion exception. So there's an exception to the rule that anticipated profits are not recoverable in the circumstance where the termination decision is an abuse of discretion. Where do I find that exception? Well, that goes, you can find it in the Reiner, John Reiner case in the Court of Claims, and it proceeds all the way through up to Securiforce. Now, granted, in virtually all of the cases, the government finds a reason to justify the termination decision. I respectfully submit in this case, there is no reasonable basis for termination for convenience. Therefore, the exception applies and an appellant is entitled to its lost profits. Counsel, I'll give you another two minutes because you haven't gotten to the points that you wanted to make. Yeah. Also, with respect to the order of precedence clause, a government counsel argues that the government contractor is just supposed to know that the termination for convenience clause takes precedence. Well, that's not the way the government drafted the contract. The termination for convenience clause is back in the standard terms and conditions. The government drafted the contract to put the $2 million guaranteed minimum up in the schedule. And the government drafted the order of precedence clause to give precedence to the terms in the schedule. So if you map out the government's written contract, the $2 million guaranteed minimum takes precedent over the termination for convenience clause limitation on lost profits. Similarly, on the failure of consideration argument, the Supreme Court held long ago that an indefinite quantities contract has to have a guaranteed minimum. Well, the remedy for breach of guaranteed minimum is anticipated profits on the guaranteed minimum. Now, if the government inserts a clause that exculpates the government from the remedy for breach of the guaranteed minimum, then the guaranteed minimum is illusory. There's no consideration there because the government really doesn't have to enforce it. So for each of my submissions, I submit that appellant's appeal should be granted. That's all I have. Thank you, counsel. The case will be submitted.